UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

COREY DAY,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-728-JD

NANCY MARTHAKIS, et al.,

    Defendants.

OPINION AND ORDER

    Corey Day, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Warden Ron Neal "in his official capacity for injunctive relief related to his ongoing need for constitutionally adequate medical care for lung problems as required by the Eighth Amendment[.]" ECF 5 at 8. Second, he is proceeding against Dr. Nancy Marthakis, Nurse Sherri Fritter, Nurse Brandy Kirk, Nurse Diane Thews, and Nurse Todd Wilford (the "medical defendants") "in their personal capacities for damages for deliberate indifference to his need for medical care to address lung problems from December 2021 to the present in violation of the Eighth Amendment[.]" *Id.* at 9. Warden Neal filed a motion for summary judgment. ECF 80. The medical defendants also filed a motion for summary judgment. ECF 89. Day filed a joint response to both summary judgment motions, and the defendants filed replies. ECF 119, ECF 120, ECF 123, ECF 124. The summary judgment motions are now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately

indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants'

3

responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The medical defendants submit affidavits and Day's medical records, which show the following facts: On December 28, 2021, Day was seen by a non-party nurse for complaints of stabbing pains when he took a deep breath. ECF 91-1 at 17-19; ECF 91-6 at 1. The nurse contacted Dr. Marthakis, who ordered that Day receive a chest x-ray and vital sign checks three times a week for 2 weeks. *Id.* Based on the physical exam, Dr. Marthakis did not believe an EKG was indicated at that time. *Id.* Dr. Marthakis reviewed the x-ray results on December 30, 2021, and found his lungs were normal. *Id.*

On January 4, 2022, a non-party nurse contacted Nurse Thews after examining Day and reported that Day was concerned about a lung infection but his vital signs were within normal limits, his lungs were clear on exam, and his chest x-ray was normal. ECF 91-1 at 22-24; ECF 91-5 at 2. Nurse Thews ordered Tylenol and a series of blood work to rule out infection. *Id.*

On January 6, 2022, Dr. Marthakis first examined Day for his lung issues. ECF 91-6 at 2; ECF 91-1 at 25-27. Day reported he had a cough three days ago which produced clear phlegm at first and then turned yellowish in color. *Id.* He also complained of twinges of pain in his sternal area under his left nipple. *Id.* He denied any wheezing, significant weight changes, or hemoptysis, and his vital signs were within normal limits. *Id.* Dr.

4

Marthakis performed a physical exam and was unable to reproduce the pain he reported by pressing on his chest. *Id.* His lungs were clear and his breathing was normal. *Id.* Dr. Marthakis assessed Day with a cough and prescribed a Z-Pak antibiotic and one-time inhaler. *Id.* They discussed the unremarkable x-ray results and Dr. Marthakis explained it was negative for any lung issue. *Id.* Dr. Marthakis had Day undergo an EKG which had normal results and ruled out any serious cardiac issues such as fatal arrhythmia, myocardial infarction, myocardial ischemia and other serious cardiac issues. *Id.* One section of the EKG was read by the computer as abnormal, but Dr. Marthakis believed that section did not indicate any serious cardiac issue and was likely caused by the way the skin on Day's chest was prepped for the EKG. *Id.* Day was fixated on the abnormal section, but Dr. Marthakis assured him the EKG ruled out any cardiac issue as the cause of his chest and lung pain. *Id.*

On January 12, 2022, Day's lab results returned and he had all normal values except for abnormal absolute neutrophils, neutrophils, lymphocytes, red blood cells, and mean corpuscular hemoglobin ("MCH").[1] ECF 91-6 at 3. Dr. Marthakis believed these abnormalities were not clinically significant, did not require additional testing or treatment, and were unrelated to Day's complaints of lung pain. *Id.*

On January 13, 2022, Dr. Marthakis examined Day in the Chronic Care Clinic and they discussed his lung issues. ECF 91-1 at 35-37; ECF 91-6 at 3. Day reported a dry, non-

---

[1] Each of these terms relate to markers for white and red blood cells. Neutrophils are a type of white blood cell that kill bacteria, lymphocytes are a small form of white blood cell occurring especially in the lymphatic system, and MCH measures the average amount of hemoglobin (a protein that transports oxygen) in each red blood cell.

5

productive cough that occurred occasionally, and Dr. Marthakis noted his cough had improved. *Id.* Day's vital signs were within normal limits and a physical examination found his lungs were clear, his cardio system was normal, and he had no cough or chest wall tenderness. *Id.* Dr. Marthakis had a lengthy conversation with Day about his cough, and Day agreed to give his breathing issues some time and to return to the medical clinic if his symptoms persisted. *Id.*

On January 24, 2022, Day was examined by Nurse Kirk for his lung issues. ECF 91-1 at 38-40; ECF 91-3 at 2. Nurse Kirk noted Day had previously used a Z-Pak and inhaler for this issue, and had recently had a chest x-ray and EKG performed which had no significant findings. *Id.* Nurse Kirk performed a peak flow test[2] on Day to check his lung function, which was normal. *Id.* Nurse Kirk instructed Day on the proper use of his inhaler and instructed him to contact medical staff if he experienced shortness of breath, wheezing, chest pain, or difficulty breathing. *Id.*

On February 8, 2022, Nurse Kirk again saw Day regarding his lung issues. ECF 91-1 at 47-49; ECF 91-3 at 3. Day complained of a feeling like "inflammation" in the right middle lung field, reported he was able to do his workout routine without difficulty, and denied weight loss, hemoptysis, chest pain, cough, shortness of breath, dyspnea, orthopnea, or decreased exercise tolerance. *Id.* Day requested numerous tests, but Nurse Kirk did not believe the tests were medically indicated because his previous chest x-ray and EKG showed no signs of any cardiopulmonary distress. *Id.* Day's vital

---

[2] A simple test to measure the volume and rate of air flow in and out of the lungs.

6

signs were normal, and a physical exam found his lungs were clear and his chest was normal. *Id.* Nurse Kirk assessed Day as having "pleuritic pain," which is pain in the area of tissue between the lungs and the chest wall, and offered him Tylenol, which he declined. *Id.*

On March 1, 2022, Nurse Kirk again examined Day for his lung issues. ECF 91-1 at 53-58; ECF 91-3 at 3-4. On examination, Day's vital signs were normal, his lungs were clear, and his oxygen saturation was 98%, which is normal. *Id.* Day became argumentative because he wasn't receiving the diagnostic testing he wanted, and left the exam early before Nurse Kirk could issue any orders. *Id.* Nurse Kirk contacted Dr. Marthakis and submitted a consultation request for an echocardiogram. *Id.*

On March 2, 2022, Nurse Kirk obtained Rubicon[3] consultations from a pulmonologist and cardiologist regarding Day's chest pain. ECF 91-1 at 59; ECF 91-3 at 4. The pulmonologist reviewed Day's records and recommended that Nurse Kirk look into non-pulmonary causes for his chest pain and consider an echocardiogram or exercise stress test. ECF 91-1 at 59; 91-3 at 4. The pulmonologist further recommended that if Nurse Kirk thought further diagnostic testing was indicated, she should consider a CT scan of the chest. *Id.* The cardiologist recommended an echocardiogram or 48-hour Holter or exercise stress test to rule out a cardiac component to Day's complaints. *Id.*

On March 3, 2022, Day's lab results showed his neutrophils were slightly low and his lymphocyte count was slightly high. ECF 91-6 at 4. Dr. Marthakis believed these

---

[3] Rubicon is a company that provides specialty consultations from cardiologists, pulmonologists, and other specialists based on a review of the patient's medical records.

findings were not clinically significant and did not require further testing or treatment. *Id.*

On March 15, 2022, Nurse Kirk examined Day regarding his lung complaints. ECF 91-1 at 60-62; ECF 91-3 at 4-5. Nurse Kirk told Day they were still waiting on the results of the recommended echocardiogram and offered him Tylenol, which he declined. *Id*. Nurse Kirk updated Dr. Marthakis regarding Day's continued complaints, and they scheduled Day for a follow-up visit with a medical provider in two weeks to discuss the results of his pending echocardiogram. ECF 91-1 at 60-62; ECF 91-6 at 3-4. On March 16, 2022, the echocardiogram results came back normal. ECF 91-3 at 5.

On March 22, 2022, Day saw Nurse Wolford and requested to have a thoracentesis procedure performed, which is a scraping of the lungs. ECF 91-1 at 63-65; ECF 91-4 at 2-3. This procedure typically is done as a diagnostic tool to find the cause of a pleural effusion, which occurs when too much fluid builds up around the lungs and is diagnosed on a chest x-ray. *Id.* Because Day did not have a pleural effusion, Nurse Wolford did not believe there was any reason to order a thoracentesis. *Id.* Nurse Wolford explained to Day that it appeared his pain was musculoskeletal in nature and not a medical problem with his lungs or heart. *Id.* Day's vital signs were normal except for his blood pressure, which was elevated at 146/95. *Id.* Nurse Wolford did not believe Day's blood pressure was elevated enough that it required treatment or medication. *Id.* Nurse Wolford opined that the origin of Day's pain was likely a minor injury to his intercostal cartilage, and Day agreed to give the injury time to heal. *Id.* Nurse Wolford

8

instructed Day to take over-the-counter pain medication and to consider deep breathing to help the lungs clear themselves. *Id.*

On April 3, 2022, Nurse Thews examined Day for his lung complaints. ECF 91-1 at 67-70; ECF 91-5 at 2-3. Nurse Thews reviewed Day's various diagnostic test results including chest x-ray, EKG, and echocardiogram, and reviewed his vital signs which were normal except for elevated blood pressure. *Id.* Day's blood pressure was 162/98, which Nurse Thews did not believe was high enough to warrant any treatment or medication. *Id.* On physical exam, Day's lungs were clear and his respirations and oxygen saturation was normal. *Id.* Nurse Thews noted some mild tenderness to his upper back, so she ordered an x-ray of his thoracic spine to check for any musculoskeletal problems. *Id.* She also ordered a thyroid level test and a lipid panel. *Id.* Nurse Thews concluded Day's complaints were most likely attributed to his back rather than his lungs, so she ordered Prednisone for back pain and swelling, Tylenol, and weekly blood pressure and pulse checks. *Id*. She also provided him education on exercises for back pain. *Id.*

On April 5, 2022, Nurse Thews consulted Dr. Marthakis about Day's normal test results and ongoing complaints. ECF 91-6 at 4. Dr. Marthakis didn't recommend any changes to Nurse Thews' treatment plan based on the normal chest x-ray, normal EKG, and normal echocardiogram. *Id.* On April 7, 2022, Dr. Marthakis saw Day for a chronic care visit and conducted a physical examination which found his heart and lung systems were normal. *Id.*; ECF 91-1 at 73-75.

On April 23, 2022, Nurse Thews saw Day for his lung complaints. ECF 91-1 at 78-80; ECF 91-5 at 3. Day reported pain in his upper back and stated he believed he had

9

lung cancer. *Id.* The x-ray of his thoracic spine showed mild lower thoracic disc degeneration, meaning normal wear and tear of the disks from aging and activity. *Id.* His vital signs and a physical exam both were normal, so Nurse Thews assessed him with back pain and offered to prescribe pain medication which he declined. *Id.* She advised him to continue with his back stretching and strengthening exercises, and concluded he had no markers or indications that he had cancer or that he required further diagnostic testing to rule out cancer. *Id.*

On April 29, 2022, Day had lab work done which showed normal cholesterol and triglycerides, minimally elevated HDL, slightly low neutrophils and absolute neutrophil counts, and high lymphocytes. ECF 91-6 at 4. Dr. Marthakis believed these findings were not clinically significant, did not require treatment or testing, and were unrelated to his complaints of chest pain. *Id.* On May 3, 2022, Dr. Marthakis met with Day to go over the lab results. *Id.* However, Dr. Marthakis reviewed his chart and realized the offsite facility had not run all of the testing that was ordered, so she ordered the labs to be redrawn in a week. *Id.* at 4-5.

On May 27, 2022, Day was sent to an outside hospital for an x-ray of his hand following a boxing injury. ECF 91-1 at 90-100, 145-168; ECF 91-6 at 5. While Day was in the outside hospital's emergency room, he complained of chest pain and was given a chest x-ray, EKG, and labs that all came back normal. *Id.* The hospital physician did not believe Day had any condition that required emergent intervention or further testing, and opined that his chest pain may be related to anxiety. *Id.*; ECF 91-1 at 153.

10

On June 17, 2022, Day's labs came back normal except for low neutrophil, absolute neutrophil, lymphocyte, and creatine serum counts. ECF 91-6 at 5. Dr. Marthakis believed these abnormalities were not clinically significant and were unrelated to his complaints of chest pain. ECF 91-6 at 5.

On July 28, 2022, Dr. Marthakis met with Day to go over his lab results. ECF 91-6 at 6. His vital signs were within normal limits and his lab work was unremarkable. *Id.* Several items were outside normal ranges, but Dr. Marthakis did not believe any abnormalities indicated a medical issue or the need for treatment. *Id.* Dr. Marthakis ordered repeat lab work to be safe. *Id.* On September 9, 2022, Dr. Marthakis again reviewed Day's lab work and determined that any abnormal results were not clinically significant and were unrelated to Day's complaints of chest pain. *Id.* On September 28, 2022, Dr. Marthakis reviewed Day's lab work and concluded that any abnormal results were not clinically significant and were unrelated to Day's complaints of chest pain. *Id.* No further information regarding Day's condition or treatment was made available to the Court.

*Medical defendants*

Day is proceeding against the medical defendants "for deliberate indifference to his need for medical care to address lung problems from December 2021 to the present in violation of the Eighth Amendment[.]" ECF 5 at 9. The medical defendants argue summary judgment is warranted in their favor because the undisputed facts show they consistently used their professional judgment to assess and treat Day's complaints of lung problems and provided constitutionally adequate treatment for his complaints. ECF 90.

11

In his response, Day argues the medical defendants were deliberately indifferent because they did not adequately diagnose and treat his lung problems despite numerous signs indicating something was seriously wrong with his lungs. ECF 119 at 1-9. Specifically, he argues the medical defendants should have known he required treatment for his lungs because his blood pressure was consistently high, he suffered from anxiety, and his blood work, physical exams, and EKG readings were consistently abnormal. *Id.* He argues that his EKG results, which he believed were abnormal, and his high "chemical HDL," neutrophil, "absolute neutrophil CT," and "serum creatine" levels should have put the medical defendants on notice of a serious problem with his chest and lungs, and they were deliberately indifferent for not properly diagnosing and treating him for "Neutropenia." *Id.*

Here, it's undisputed the defendants treated Day's complaints of lung problems by (1) consistently drawing, monitoring, and analyzing his labs; (2) consulting a pulmonologist and cardiologist and following their recommendations; (3) sending him for diagnostic testing including an EKG, echocardiogram, and x-rays, which they believed had unremarkable findings; and (4) providing him pain medication, steroids, and exercises to reduce back pain based on their belief his problems were caused by his back rather than his lungs. Therefore, to succeed on this claim, Day must provide evidence this treatment was "so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *See Hayes*, 546 F.3d at 524.

In his response, Day disagrees with the medical defendants' conclusions that the results of his labs and diagnostic tests were unremarkable and unrelated to his lung

12

complaints, but he provides no evidence these conclusions were "plainly inappropriate." Specifically, it's undisputed the defendants consistently monitored and analyzed Day's labs, and they attest they used their professional judgment to conclude the lab and test results showed his lungs were not the cause of his complaints. They then proceeded to treat Day for potential musculoskeletal issues, which they believed may be the cause of his complaints. Because the defendants monitored Day's condition and used their professional judgment to determine the best course of treatment, they did not intentionally or recklessly disregard his needs. *See Hayes*, 546 F.3d at 524. And while Day disagrees with the medical defendants' conclusions and contends his abnormal test results showed an issue with his lungs that required treatment, this amounts to a mere disagreement with medical professionals, which is insufficient to show an Eighth Amendment violation. *See Ciarpaglini*, 352 F.3d at 331 (concluding an inmate's complaint that conceded he was receiving regular medical care and merely disagreed with his doctor's diagnoses and treatment decisions did not state a cognizable Eighth Amendment claim); *Reed v. Indiana Dept. of Corrections*, 30 F. App'x 616, 618 (7th Cir. 2002) (concluding an inmate's argument that his physician should have prescribed him a different medication, provided surgery options, and conducted a liver biopsy was a mere "disagreement with medical personnel" and could not show deliberate indifference "even if the treatment decisions demonstrate negligence or malpractice"); *Davis v. Gee*, No. 14-CV-617-WMC, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (collecting cases rejecting pro se prisoners' efforts to self-diagnose). As for Day's contention his blood pressure was consistently high, he only speculates that this was related to his complaints

13

of lung problems, and there's no evidence it was "plainly inappropriate" for the defendants to conclude his blood pressure was not high enough to warrant medication and was unrelated to his complaints of lung problems. Because it's undisputed the defendants exercised their professional judgment and took reasonable steps to assess, diagnose, and treat Day's complaints of lung problems, no reasonable jury could conclude they violated his Eighth Amendment rights. Summary judgment is therefore warranted in favor of the medical defendants.

*Warden Neal*

Day is proceeding against Warden Neal "for injunctive relief related to his ongoing need for constitutionally adequate medical care for lung problems as required by the Eighth Amendment[.]" ECF 5 at 8. Neither party provides any evidence that Day's condition, or the treatment he has received, has changed in any significant way since the filing of this lawsuit. Therefore, because the record shows the defendants have consistently provided constitutionally adequate medical care for Day's complaints of lung problems by drawing and monitoring his labs, performing diagnostic testing, and consulting experts, as discussed above, he is not entitled to injunctive relief on this claim.[4] Summary judgment is therefore warranted in favor of Warden Neal.

For these reasons, the court:

(1) GRANTS Warden Neal's motion for summary judgment (ECF 80);

---

[4] Alternatively, it appears from the record this claim is now moot, as Day states he is now housed at Westville Correctional Facility and is no longer under the care of Warden Neal at Indiana State Prison. ECF 119 at 10. Warden Neal did not raise a mootness argument in his summary judgment motion, but the court notes that, even if Day had shown he received constitutionally inadequate medical care at Indiana State Prison, this claim would likely be dismissed as moot.

(2) GRANTS the medical defendants' motion for summary judgment (ECF 89); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Corey Day and to close this case.

SO ORDERED on September 10, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT